# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| **COLUMBUS LIFE INSURANCE, COMPANY**<br>                                   Plaintiff,<br><br>        **v.**<br><br>**WILMINGTON TRUST COMPANY**<br>**As Securities Intermediatory, and**<br>**THE LIP TRUST,**<br>                                   Defendants. | **C.A. No. N19C-11-175-PRW CCLD** |
| **COLUMBUS LIFE INSURANCE, COMPANY**<br>                                   Plaintiff,<br><br>        **v.**<br><br>**WILMINGTON TRUST COMPANY**<br>**As Securities Intermediatory, and**<br>**THE LIP TRUST,**<br>                                   Defendants. | **C.A. No. N20C-06-012-PRW CCLD** |

Submitted: February 3, 2023
Decided: February 13, 2023

*Upon Plaintiff Columbus Life Insurance Company's*
*Motion for Partial Summary Judgment,*
**GRANTED in Part, DENIED in part,**

*Upon Defendant The LIP Trust's*
*Motion for Partial Summary Judgment,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

Donald L. Gouge, Jr., Esquire, DONALD L. GOUGE, JR., LLC, Wilmington, Delaware, Michael J. Miller, Esquire, Joseph M. Kelleher, Esquire, Charles J. Vinicombe, Esquire, Philip J. Farinella, Esquire, COZEN O'CONNOR, Philadelphia, Pennsylvania, *Attorneys for Plaintiff Columbus Life Insurance Company*.

Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire, K&L GATES LLP, Wilmington, Delaware, Steven Sklaver, Esquire, Krysta Kauble Pachman, Esquire, SUSMAN GODFREY LLP, Los Angeles, California, Ari Ruben, Esquire, SUSMAN GODFREY LLP, New York, New York, *Attorneys for Defendants Wilmington Trust Company as Securities Intermediatory, and the LIP Trust*.

**WALLACE, J**

This dispute concerns two $5 million life insurance policies procured on the lives of two senior citizens, Rita Kluener and Mary Jane Chisholm (the "Policies").[1] Plaintiff Columbus Life Insurance Company seeks a declaration that the Policies are stranger-originated life insurance policies ("STOLIs") and therefore void under 18 *Del. C.* § 2704. Columbus Life also wants to retain the $8.2 million in premiums it has collected since 2004 from Defendants Wilmington Trust Company ("Securities Intermediary"), LIP Trust (collectively with Wilmington Trust, the "Defendants"), and their predecessors. Defendants argue the Policies are not STOLIs, but if they are, they seek a refund for the premiums paid and damages for allegedly being fraudulently induced to pay those premiums. Both Columbus Life and Defendants allege the other committed fraud by concealing the fact the Policies were or were suspected to be STOLIs.

Columbus Life moved for summary judgment as to its own declaratory judgment claims and all Defendants' counterclaims. LIP Trust moved for summary judgment as to Columbus Life's fraud claim (which is against only LIP Trust).

On the summary judgment record, the Court finds the policies lack an insurable interest and are therefore void under 18 *Del. C.* § 2704. But further fact-

---

[1] The parties briefed the two actions together and the Court subsequently consolidated them. (C.A. No. N19C-11-175 PRW CCLD & C.A. No. N20C-06-012 PRW CCLD) for trial. D.I. 315. Because the dockets for C.A. No. N19C-11-175 PRW CCLD (Kluener) and C.A. No. N20C-06-012 PRW CCLD (Chisholm) are identical for the motions for summary judgment, the citations are to the *Kluener* (N19C-11-175) docket only unless otherwise noted.

finding is required on both parties' fraud claims.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE PARTIES

Plaintiff Columbus Life is an Ohio corporation with its principal place of business in Ohio.[3]

Defendant Wilmington Trust is a Delaware corporation with its principal place of business in Delaware.[4] Defendant LIP Trust is the beneficial owner and entitlement holder of the Policies.[5] Defendant Wilmington Trust is the administrator of the Policies, and, as securities intermediary, brought the counterclaims against Columbus Life on its and LIP Trust's behalf.[6]

### B. FACTUAL BACKGROUND

The parties and the Court are well-acquainted with the factual and procedural background of this action. A detailed summary of the facts regarding the Kluener action is set forth more fully in the Court's earlier memorandum opinion and order

---

[2] On February 3, 2023, the parties stipulated to postponing summary judgment on the return-of-premiums claim pending the Delaware Supreme Court's forthcoming decision in *Wilmington Trust, National Association, as Securities Intermediary v. Sun Life Assurance Company of Canada*, Del. Supr. No. 12, 2022. D.I. 328. The Court agrees that staying the return-of-premiums claim makes good sense. So, this decision does not address that claim.

[3] Third Am. Compl. ¶ 1, Aug. 27, 2021 (D.I. 205).

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 3; Defs.' Answer and Countercl. ¶ 3, Sept. 13, 2021 (D.I. 212).

[6] Third Am. Compl. ¶ 3; Defs.' Answer and Countercl. ¶ 3.

granting in part, and denying in part, Columbus Life's Motion to Dismiss.[7]

On June 28, 2004, and August 2, 2004, Columbus Life issued two $5 million insurance policies on the lives of Mary Jane Chisholm and Rita Kluener (the "Insureds") respectively.[8] These policies were owned by the Chisholm and Kluener Trusts respectively.[9] Those Trusts were controlled by "Participation Agreements."[10]

The Participation Agreements provided that the Trusts would "purchas[e] life insurance policies on the life of the Insured for the benefit of the Owners" which is a defined term in the Trust Agreement.[11] In the Trust Agreements, "Owners" is defined as "each Person holding a Certificate of Beneficial Interest and listed as a beneficial owner of the Trust on the register maintained by the Trustee pursuant to Section 3.2(a), in such Person's capacity as a beneficial owner of the Trust. Initially the sole Owner shall be the Insured."[12]

Of note, Section 7(b) of the Participation Agreements provides that:

The Insured acknowledges that the Insured is not permitted (i) to select

---

[7] *See Columbus Life Ins. Co. v. Wilm. Tr. Co.*, 2021 WL 537117 (Del. Super. Ct. Feb. 15, 2021) (Kluener action).

[8] D.I. 227, Ex. C at WT-LIP_Kluener_000599 (Kluener Insurance Policy); D.I. 227, Ex. D at WT-LIP_Chisholm_000469 (Chisholm Insurance Policy).

[9] D.I. 227, Ex. C at WT-LIP_Kluener_000599 (Kluener Insurance Policy); D.I. 227, Ex. D at WT-LIP_Chisholm_000469 (Chisholm Insurance Policy).

[10] D.I. 239, Ex. K (Chisholm Family Delaware Trust); D.I. 278, Ex. J (Kluener Family Delaware Trust).

[11] D.I. 237, Ex. H at 1 (Kluener Trust Participation Agreement); D.I. 238, Ex. I at 1 (Chisholm Trust Participation Agreement).

[12] D.I. 239, Ex. K § 1.1 (Chisholm Family Delaware Trust); D.I. 278, Ex. J § 1.1 (Kluener Family Delaware Trust).

-3-

the lenders, the issuers or type of life insurance policies or the issuers or type of annuity policies, (ii) to change the lenders, the life insurance policies or the annuity policies, and (iii) to own directly the life insurance policies or the annuity policies.

Section 8(b) provides that:

The Trust will use death benefits from the life insurance policies on the life of the Insured to pay (i) interest, principal and other amounts on the loans from the lenders to the Trust, (ii) taxes, expenses and other obligations of the Trust, and (iii) the applicable scheduled death benefits to the Owners. Under no circumstances can the Owners or any permitted successor(s) or assign(s) of the Owners' beneficial interest in the Trust receive a distribution from the Trust of a portion of the death benefits from the life insurance policies on the life of the Insured that is greater than the Owners' allocable scheduled death benefit as set forth on the attached schedule.[13]

The Insureds funded the Trusts with an initial $1,000.[14] The additional sums to pay for the insurance policies came from nonrecourse loans to the Trusts, memorialized in "Master Funding Agreements."[15]

After initially funding the Policies by paying the premiums, the funder decided to discontinue funding the Policies and notified the Trusts they would either have to fund the Trusts themselves or sell them.[16] The Policies were eventually

---

[13]  D.I. 237, Ex. H §§ 7(b), 8(b) (Kluener Trust Participation Agreement); D.I. 238, Ex. I §§ 7(b), 8(b) (Chisholm Trust Participation Agreement).

[14]  D.I. 239, Ex. K § 3.1 (Chisholm Family Delaware Trust); D.I. 278, Ex. J § 3.1 (Kluener Family Delaware Trust).

[15]  D.I. 240, Ex. L at SOUTH BAY 00002426 (Kluener Master Funding Agreement); D.I. 241, Ex. M at L/H/A/P 001367 (Chisholm Master Funding Agreement). D.I. 230, Ex. A at 63 (Deposition of Patrick Shanley); D.I. 232, Ex. C at 34-35 (Deposition of Mark Scott Goodman).

[16]  D.I. 244, Ex. P (Notice of Loan Default – Kluener); D.I. 245, Ex. Q (Authorization to Sell Trust Certificate – Kluener); D.I. 246, Ex. R (Authorization to Sell Trust Certificate – Chisholm).

acquired by Invest SLPS LLC.[17]

Invest SLPS LLC then sold the Policies to Private Equity Management Group ("PEM").[18] PEM then solicited foreign investors (collectively the "Banks" and later the "LIP Trust").[19] As part of their investment pitch, PEM produced a private offering memorandum that contained the benefits and risks associated with the investment.[20]

In April 2009, the United States Securities and Exchange Commission ("SEC") filed an action in federal court against PEM and others for violating federal securities laws.[21]

The United States District Court for the Central District of California subsequently installed Robert Mosier as a receiver.[22] Keeping with his duties as Receiver, Mr. Mosier commissioned David Dorr to compile a report on the insurance

---

The Court was unable to locate in the exhibits the Notice of Loan Default for Chisholm but assumes based on briefing and related exhibits that it was identical to the one sent to Kluener.

[17] D.I. 230, Ex. A at 237 (Deposition of Patrick Shanley).

[18] D.I. 274, Ex. TT (Change of Ownership for Kluener Policy); D.I. 275, Ex. UU (Change of Ownership for Chisholm Policy). The Change of Ownership documents listed GVEC PS D1 Trust as the owner, which is an investment product of PEM. D.I. 228, Ex. S at 77, 96 (Deposition of Ariel Kao).

[19] *See* D.I. 276, Ex. VV at 19-21 (Deposition of Seig Huang).

[20] *See id*.

[21] *Sec. and Exch. Comm'n v. Priv. Equity Mgmt. Grp., Inc.*, 2009 WL 2019788, at *1 (C.D. Cal. July 2, 2009)

[22] *See Sec. and Exch. Comm'n v. Priv. Equity Mgmt. Grp., Inc.*, 2009 WL 1310984, at *3 (C.D. Cal. Apr. 27, 2009).

policies at issue in the SEC action.[23]  The conclusion to Mr. Dorr's Report was that: "The PEM Group portfolio has a number of risky policies but also some policies that will likely perform well . . . ."[24]

Around the same time, Mr. Mosier sought an opinion from Kimberly D. Hinkle, General Counsel of Asset Servicing Group, LLC, as to risks associated with changing the trustee of the policies under the receivership.[25]  Ms. Hinkle advised that insurance law was evolving and made recommendations to lessen the risks the policies then posed.[26]

Mr. Mosier established a trust, called LIP Trust, and transferred the Policies there.[27]  When doing so, Mr. Mosier did nothing to warrant the quality or legality of the Policies.[28]

On November 19, 2019, Columbus Life sued in this Court against Defendants

---

[23]  D.I. 228, Ex. W at 112-13, 120 (Deposition of Seig Huang).

[24]  D.I. 278, Ex. DDD at ASG-002627.

[25]  D.I. 277, Ex. AAA at 1-2 (June 2, 2009 Letter from Kimberly D. Hinkle to Robert Mosier).

[26]  *Id.* at 2; *see id.* at 1 ("The life settlement market is an evolving market, and as such yesterday's experience is not a guarantee of how an insurance carrier's [sic] will scrutinize or address matters in the future.").

[27]  D.I. 277, Ex. III at 3 (Order Granting Receiver's Motion for Order Approving Interim Distribution of Certain Receivership Assets or in the Alternative to Hold or Sell Such Assets, *Sec. and Exch. Comm'n v. Private Equity Mgmt. Gp., LLC et al.*, Case No. 2:09-cv-02901-PSG (EX) (C.D. Cal. Dec. 15, 2010)).

[28]  *See id.* at 1 ("Each and every Transferred Interest will be transferred on an 'as-is, where-is, with all faults and without representations or warranties, implied or expressed' basis, and both the Transferred Interests and the Transferred Policies will be subject to any and all taxes, liens, restrictions and other encumbrances and matters of record, both known and unknown.").

seeking to declare the Kluener Policy void. Columbus Life says it sued then because it did not believe it had a meritorious case until learning about the changing legal landscape in insurance law.[29] LIP Trust says the timing of the suit was because Rita Kluener was nearing age 100 at which point premiums on the Policy were no longer due.[30] On June 1, 2020, Columbus Life brought a similar suit on the Chisholm Policy.[31]

## C. PROCEDURAL HISTORY

Columbus Life has penned three causes of action.[32] In Count I, Columbus Life seeks a declaration against Wilmington Trust that the policies are void *ab initio* because they're STOLIs.[33] In Count II, Columbus Life seeks a declaration against Wilmington Trust that the policies lack an insurance interest since they were "procured by and for the benefit of strangers without any insurable interest."[34] In Count III, Columbus Life asserts that LIP Trust committed fraud by either stating falsely or omitting facts concerning the nature of the Policies, and that caused

---

[29] D.I. 229, Ex. FFF at 272-73 (Deposition of Lisa Fangman); *see also* D.I. 229, Ex. AAA at 50-51 (Deposition of Justin Payne).

[30] LIP Trust's Mot. for Summ. J. at 18, May 27, 2022 (D.I. 227); *id.*, Ex. C at WT-LIP_Kluener_000597 (Kluener Insurance Policy); *id.*, Ex. D. at WT-LIP_Chisholm_000467 (Chisholm Insurance Policy).

[31] C.A. No. N20C-06-012 PRW CCLD D.I. 1.

[32] Third Am. Compl. ¶¶ 52-71.

[33] *Id.* ¶¶ 52-56.

[34] *Id.* ¶¶ 57-62.

Columbus Life to never investigate whether the policies were STOLIs.[35]

Defendants bring two counterclaims.[36] In Counterclaim I, Defendants allege Columbus Life committed fraud by either stating falsely or omitting material facts concerning the nature of the Policies, and that induced LIP Trust to continue paying premiums.[37] In Counterclaim II, Defendants, in the alternative, seek a declaration that Columbus Life must return all premiums collected with interest.[38]

Columbus Life has moved for summary judgment on Counts I and II of its Third Amended Complaint, and on Counterclaims I and II.[39] LIP Trust has moved for summary judgment on Count III (fraud) of Columbus Life's Third Amended Complaint.[40] In other words, each side has collectively moved for summary judgment on all claims and counterclaims without overlap.

The Court previously granted, in part, and denied, in part, Columbus Life's motion to dismiss Defendants' counterclaims; the Court also granted, in part, and denied, in part, Columbus Life's motion to strike certain of Defendants' affirmative defenses in the Kluener action.[41]

---

[35] *Id.* ¶¶ 63-71.

[36] Defs.' Answer and Countercl. ¶¶ 75-92, 118-19.

[37] *Id.* ¶¶ 75-83.

[38] *Id.* ¶¶ 84-92, 118-19.

[39] Pl.'s Mot. for Summ. J., May 27, 2022 (D.I. 226).

[40] LIP Trust's Mot. for Summ. J. at 2.

[41] *See Columbus Life Ins. Co.*, 2021 WL 537117. Again, the Kluener and Chisholm actions have been consolidated for a pending trial. D.I. 315.

## II. STANDARD OF REVIEW

This Court can grant a moving party's motion for summary judgment under Delaware Superior Court Rule 56 only when no genuine issue of material fact exists and the party is entitled to judgment as a matter of law.[42] Summary judgment "will not be granted if there is a material fact in dispute"[43] or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[44] The moving party has the burden of demonstrating "its claim is supported by undisputed facts."[45] If the moving party meets its burden, the burden shifts to the non-moving party to show there is a "genuine issue for trial."[46] In determining whether such a genuine issue exists, "the Court must view the facts in the light most favorable to that non-moving party."[47] "Lastly, the Court accepts as true the parties' factual stipulations."[48]

---

[42] Del. Super. Ct. Civ. R. 56; *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 19, 2017).

[43] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[44] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[45] *Radulski*, 2020 WL 8676027, at *3 (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[46] Del. Super. Ct. Civ. R. 56(e); *CNH Indus. Am. LLC v. Am. Casualty Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015) ("If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.").

[47] *Radulski*, 2020 WL 8676027, at *3 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977)).

[48] *Id.*

"While the Court may not be able to grant summary judgment 'if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record,'"[49] "a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[50]

## III. DISCUSSION

### A. THE POLICIES ARE VOID FOR LACK OF AN INSURABLE INTEREST (COUNTS I AND II).

There have been significant decisions written on STOLIs in the past few years.[51] This Court and its sister courts have done yeoman's work clarifying the law that the Court now summarizes.

Under 18 *Del. C.* § 2704, a person procuring life insurance must have an insurable interest in the insured.[52] Those "categories of persons that have an insurable interest in an individual's life include the individual insured and others, such as close family members or business associates and the 'trustee of a trust

---

[49] *Id.* at *4 (quoting *CNH Indus. Am. LLC*, 2015 WL 3863225, at *1).

[50] *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999); *Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. Aug. 23, 1996).

[51] *See e.g., Geronta Funding v. Brighthouse Life Ins. Co.*, 284 A.3d 47 (Del. 2022); *Est. of Barotz by Barotz v. Vida Longevity Fund, L.P.*, 2022 WL 16833545 (Del. Super. Ct. Nov. 9, 2022); *Est. of Berland by Gilman v. Lavastone Cap., LLC*, 2022 WL 15023450 (D. Del. Sept. 28, 2022); *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53 (Del. 2022); *Est. of Carmel by Warlen v. Gill Accumulation Tr.*, 2022 WL 1051385 (D. Del. Jan. 14, 2022); *Sun Life Assurance Co. of Canada v. Wilm. Tr., Nat'l Assoc.*, 2022 WL 179008 (Del. Super. Ct. Jan. 12, 2022); *Columbus Life Ins. Co. v. Wilm. Tr. Co.*, 2021 WL 3886370 (D. Del. Aug. 31, 2021).

[52] DEL. CODE. ANN. tit. 18, § 2704 (2004).

-10-

created and initially funded by' the insured."[53]

So generally, some of the latest wrangling in this area of the law has been over the extent to which a life insurance policy can be used as an investment by those without an insurable interest. Our Supreme Court has been posed certified questions from the United States District Court for the District of Delaware in *PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust*,[54] *Lavastone Capital LLC v. Estate of Berland*,[55] and *Wells Fargo Bank, N.A. v. Estate of Malkin* concerning STOLIs.[56] Most applicable here, the Delaware Supreme Court was recently asked three certified questions by the federal court. The second was this:

> Does 18 *Del. C.* § 2704(a) and (c)(5) forbid an insured or his or her trust to procure or effect a policy on his or her own life using a non-recourse loan and, after the contestability period has passed, transfer the policy, or a beneficial interest in a trust that owns the policy, to a person without an insurable interest in the insured's life, if the insured did not ever intend to provide insurance protection beyond the contestability period?[57]

The Supreme Court answered:

> No, [(1)] so long as the use of nonrecourse funding did not allow the insured or his or her trust to obtain the policy 'without actually paying the premiums' **and** [(2)] the insured or his or her trust procured or effected the policy in good faith, for a lawful insurance purpose, and

---

[53] *Est. of Barotz*, 2022 WL 16833545, at *6 (citing *Berland*, 266 A.3d at 968).

[54] 28 A.3d 1059 (Del. 2011).

[55] 266 A.3d 964 (Del. 2021).

[56] 278 A.3d 53 (Del. 2022).

[57] *Berland*, 266 A.3d at 971.

-11-

not as a cover for a wagering contract.[58]

Restated, "[u]nder *Berland*, [a] [p]olicy is void for lack of insurable interest if the use of nonrecourse funding allowed [the insured] to obtain the [p]olicy without paying the premiums."[59]  It is undisputed the Kluener and Chisholm Policies were paid with nonrecourse loans,[60] and neither Kluener nor Chisholm paid any of the premiums.  So, the inquiry ends there[61] and the Policies are void *ab initio* under 18 *Del. C.* § 2704(a).[62]

## B. SUMMARY JUDGMENT ISN'T APPROPRIATE ON EITHER SIDE'S FRAUD CLAIM (COUNT III & COUNTERCLAIM I); QUESTIONS OF MATERIAL FACT REMAIN.

Under Delaware law, fraud consists of the following elements:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's

---

[58]  *Id*. at 973 (emphasis added) (quoting *Price Dawe*, 28 A.3d at 1076).

[59]  *Est. of Barotz*, 2022 WL 16833545, at *7 (citing *Berland*, 266 A.3d at 968).

[60]  D.I. 240, Ex. L at SOUTH BAY 00002426 (Kluener Master Funding Agreement); D.I. 241, Ex. M at L/H/A/P 001367 (Chisholm Master Funding Agreement). D.I. 230, Ex. A at 63 (Deposition of Patrick Shanley); D.I. 232, Ex. C at 34-35 (Deposition of Mark Scott Goodman).

[61]  *Est. of Barotz*, 2022 WL 16833545, at *7-10 (finding that because the insured did not pay the policy's premium, the policy was void *ab initio* without analyzing the second *Berland* question); *Estate of Berland by Gilman*, 2022 WL 15023450, at *4 (finding a policy void if it fails either of *Berland*'s two prongs).

[62]  Defendants argue these cases present an issue of first impression because the funders intended the policies to be valid and sought to use annuities.  What Defendants want the Court to do is judge the intent and knowledge of the parties when setting up what were essentially third-party investment vehicles.  The Court need not engage in this analysis since the *Berland* Court makes clear: "*Price Dawe* directs courts to determine who procured a policy by examining 'who pays the premium.'"  *Berland*, 266 A.3d at 972 (quoting *Price Dawe*, 28 A.3d at 1075).  It is undisputed neither Kluener nor Chisholm paid the premiums under the scheme devised here.

-12-

action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[63]

In addition to overt misrepresentations, "fraud also may occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."[64]

Both parties allege similar acts of fraud. Columbus Life says that LIP Trust knew the Policies were STOLIs yet said nothing so that it could collect on the Policies when they matured. Defendants say that Columbus Life knew the Policies were STOLIs and yet waited to allege unenforceability so they could continue to collect premiums.

The parties' fraud defenses are that they did not misrepresent or omit facts, but even if they did, there was either no intent or the other party was not induced. What the parties are arguing is the other's motive or intent to commit fraud, and their own absence of such motive or intent. "[W]hen an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[65] Just so here. Accordingly, as will be explained below, summary judgment is denied on both sides' fraud claims.

---

[63] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (citations omitted).

[64] *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773-74 (Del. Ch. 2014) (citation omitted).

[65] *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 2021 WL 4344172, at *21 (Del. Super. Ct. Sept. 23, 2021) (quoting *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019)).

### 1. Columbus Life's Fraud Claim (Count III)

Columbus Life argues LIP Trust knew the Policies were STOLIs yet "secretly harbored a plan to continue to pay premiums and conceal the fact that the Policy lacked insurable interest from Columbus Life to induce Columbus Life to not investigate the Polic[ies] and ultimately pay the death benefit on a void *ab initio* policy."[66]

LIP Trust contends that summary judgment should be granted in its favor because "(1) Columbus's claims are time-barred; (2) LIP Trust did not act knowingly or recklessly; (3) LIP Trust did not make any actionable misrepresentations or omissions concerning insurable interest; and (4) even if it had, Columbus did not justifiably rely on any alleged misrepresentations or omissions."[67]

### a. It cannot be determined on the summary judgement record, whether Columbus Life's Fraud Claim is time-barred.

Columbus Life seeks damages from the Policy commissions it paid out.[68] LIP Trust argues that because the last commission Columbus Life paid was in July 2016 for the Kluener Policy and May 2016 for the Chisholm Policy, and Columbus Life did not sue until November 2019, that its claim is time-barred under the three-year statute of limitations.[69]

---

[66] Third Am. Compl. ¶ 66.

[67] LIP Trust's Mot. for Summ. J. at 19.

[68] Pl.'s Answering Br. at 29, June 30, 2022 (D.I. 288).

[69] LIP Trust's Mot. for Summ. J. at 20-22.

Expecting Columbus Life to raise a tolling argument, LIP Trust asserts tolling does not apply because Columbus Life was on inquiry notice that the Policies were STOLIs since at least 2004.[70] LIP Trust points to three sets of facts: first, the deposition of Lisa Fangman, Columbus Life's own 30(b)(6) deponent, who acknowledged that Columbus Life had "strong suspicions" the Policies were STOLIs by 2011;[71] second, that Columbus Life investigated whether the Policies were STOLIs, deciding later to take no action;[72] third, that Columbus Life's agents knew the Policies were STOLIs and that knowledge should be imputed to Columbus Life.[73]

Columbus Life argues that Defendants internally made decisions not to bring STOLI and insurable interest concerns to Columbus Life, thus fraudulently concealing the true nature of the Policies.[74] Moreover, Columbus Life insists that it did not know it could bring its claims because it believed the Policies were past their contestability period.[75]

Boiled down, LIP Trust asserts that Columbus Life cannot rely either on LIP Trust's alleged misrepresentations, or Columbus Life's alleged lack of knowledge

---

[70] *Id.* at 22-23.

[71] *Id.* at 24 (quoting *id.*, Ex. F at 93)).

[72] *Id.* at 26-28.

[73] *Id.* at 24-25.

[74] Pl.'s Answering Br. at 37.

[75] *Id.* at 38; *see* D.I. 229, Ex. FFF at 272-73 (Deposition of Lisa Fangman).

because Columbus Life had both the suspicions and information to connect the dots.

The Court is instructed on a motion for summary judgment to construe the record in the light most favorable to the non-movant, which here is Columbus Life. While further factual findings may reveal if and when Columbus Life was on inquiry notice, at this point in the litigation, there is still a question of fact as to when and/or how strongly Columbus Life suspected the Policies were allegedly STOLIs.[76]

### b. There are disputed issues of material fact that prevent summary judgment on Columbus Life's Fraud Claim.

LIP Trust argues that Columbus Life's fraud claim fails to meet the elements of fraud. Specifically, "([a]) LIP Trust did not act knowingly or recklessly; ([b]) LIP Trust did not make any actionable misrepresentations or omissions concerning insurable interest; and ([c]) even if it had, Columbus did not justifiably rely on any alleged misrepresentations or omissions."[77]

### i. Whether LIP Trust acted knowingly or recklessly is a factual issue to be resolved at trial.

LIP Trust asserts it had no knowledge the Policies were STOLIs because when

---

[76] Within its motion's time-barred argument, LIP Trust maintains that Columbus Life's litigation expenses are not recoverable under the American Rule. LIP Trust's Mot. for Summ. J. at 21. LIP Trust acknowledges there are exceptions to the American Rule for attorney's fees but simply dismisses the exceptions saying they "do not apply here" without elaborating. *Id.* (citing *Montgomery Cellular Hldg. Co., Inc. v. Dobler*, 880 A.2d 206, 227 (Del. 2005)). This seems to be better suited in the damages portion of the argument. But, even if it were found there, it fails because a litigant might seek attorney's fees under several exceptions including bad faith. *Johnson v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

[77] LIP Trust's Mot. for Summ. J. at 19.

LIP Trust received them as restitution, it had no reason to distrust the court-appointed receiver who had found PEM's former portfolio to be valid.[78]

Columbus Life counters that when LIP Trust received the Policies from PEM Group it had reason to believe there were problems with some of the Policies.[79] Specifically, it points to the problems that were highlighted in the Dorr Report.[80] But the Dorr Report is far from conclusive.

Questions of knowledge or intent are fact-intensive and ordinarily should not be resolved on a motion for summary judgment. Here, construing the record in the light most favorable to the non-movant, there is a material question of fact as to whether LIP Trust acted knowingly or recklessly.[81]

### ii. *Whether LIP Trust made false representations is a factual dispute to be resolved by the factfinder at trial.*

LIP Trust asserts the mere act of paying premiums is not a representation of the validity of the Policies and that Columbus Life has defeated its own argument.[82] Specifically, LIP Trust alleges that Lisa Fangman agreed that paying a premium is

---

[78]  *Id.* at 29-30.

[79]  Pl.'s Answering Br. at 49-50.

[80]  *Id.*

[81]  *Humanigen, Inc.*, 2021 WL 4344172, at *21.

[82]  LIP Trust's Mot. for Summ. J. at 31-32.

not a representation of the validity of the Policies.[83]  Moreover, LIP Trust argues that Ms. Fangman dismissed the idea that Columbus Life saw the other's request for illustrations and requests for verification of coverage as representations of the validity of the Policies.[84]

Columbus Life counters that while LIP Trust did not make "overt misrepresentations," its paying of premiums and requesting of policy documents shows that "the LIP Trust intentionally concealed what it knew."[85]  Columbus Life asserts that while a party generally doesn't have a duty to speak, such a duty arose here because LIP Trust made a "materially misleading assertion that cause[d] a false impression."[86]

Essentially Columbus Life is arguing that Defendants' actions created a false impression of the Policies' validity, which was akin to a false representation.[87]

Our Supreme Court has observed that "although a statement or assertion may be facially true, it may constitute an actionable misrepresentation if it causes a false impression as to the true state of affairs, and the actor fails to provide qualifying

---

[83]  *Id.* at 32 (quoting *id.*, Ex. F at 39) (Q: Does Columbus believe that when a policyholder is paying a premium, the policyholder is making a representation that the policy is supported by an insurable interest? A. I don't believe so.").

[84]  *Id.* at 33.

[85]  Pl.'s Answering Br. at 45-46.

[86]  *Id.* at 46 (citing *Norton v. Poplos*, 443 A.2d 1, 5 (Del. 1982)).

[87]  *See id.*

information to cure the mistaken belief."[88]  Here, there is a factual issue left to be proven as to whether Defendants created a false impression such that they created actionable misrepresentation requiring curative information.

### iii. *Whether Columbus Life justifiably relied on any alleged misrepresentation or omission must be resolved via factfinding at trial.*

According to the LIP Trust, credible evidence thus far demonstrates that Columbus Life did not believe any of the misrepresentations or omissions it now alleges.[89]

Columbus Life asserts it did not know the Policies were STOLIs until 2019.[90] Its argument here is that Defendants continued to act like business was usual by paying the premiums and requesting documents.[91]  Columbus Life says it relied on the premium payments as proof that the Policies were valid and had no reason to question that so it justifiably relied on LIP Trust's misrepresentation.[92]  In other words, Columbus Life says that its justifiable reliance derived from its rational assumption that Defendants would only pay for valid Policies.[93]

"[W]hether one's reliance was reasonable generally is a question of fact that

---

[88]  *Norton*, 443 A.2d at 5 (citations omitted).

[89]  LIP Trust's Mot. for Summ. J. at 35.

[90]  Pl.'s Answering Br. at 51.

[91]  *See id.* at 51-52.

[92]  *Id.* at 52.

[93]  *See id.*

cannot be determined on summary judgment."[94] And given the present record and contentions, that's precisely so here.

## 2. Defendants' Fraud Claim (Counterclaim I)

Defendants argue that for fifteen years Columbus Life knew the Policies violated insurable interest laws, and "secretly harbored a plan to challenge the enforceability of the Polic[ies] and to refrain from paying any claim upon maturity."[95] Specifically, LIP Trust says Columbus Life made affirmative misrepresentations that: (1) Columbus Life viewed the Policies as legitimate life insurance policies; (2) "that it viewed Securities Intermediary to be the Owner of the Policy"; and, (3) "that in consideration for paying enough premiums to keep the Policy in force, Columbus Life intended to pay" the death benefits thereunder.[96] But Defendants characterize the alleged misrepresentations slightly differently in their answering brief, claiming now that Columbus Life misrepresented its "intention to keep the Polic[ies] in force" and that "if the policyowner pays enough premiums to keep the polic[ies] 'in force,' it will honor the $5,000,000 death benefit."[97]

---

[94] *Vague v. Bank One Corp.*, 2004 WL 1202043, at *1 (Del. May 20, 2004) (citing *Wilm. Tr. Co. v. Aetna Cas. & Sur. Co.*, 690 A.2d 914, 916 (Del. 1996)).

[95] Defs.' Answer and Countercl. ¶¶ 76-77. While only LIP Trust and Columbus Life moved for summary judgment, Wilmington Trust, seemingly on behalf of LIP Trust, answered Columbus Life's motion for summary judgment. So this Opinion will refer to the Defendants collectively when discussing the answering brief, but only LIP Trust when discussing its motion.

[96] *Id.* ¶ 78.

[97] Defs.' Answering Br. at 34-36, June 30, 2022 (D.I. 289).

Columbus Life forwards two arguments against Defendants' fraud counterclaim. First, that Defendants' fraud claim is just a bootstrapped breach-of-contract claim.[98] Second, that Defendants cannot prove all the elements of fraud.[99]

Like Defendants' argument, Columbus Life asserts Defendants' motive or intent to commit fraud and its own absence of the required motive or intent. "[W]hen an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[100] Accordingly, summary judgment isn't due.

### a. The Fraud Counterclaim (Counterclaim I) is not a bootstrapped breach-of-contract claim.

Columbus Life argues that Defendants are trying to bootstrap what is otherwise a breach-of-contract claim.[101] Specifically, Columbus Life alleges that Defendants' assertions of false statements made by Columbus Life are all found in the material Columbus Life was contractually required to provide.[102] To Columbus Life, because the agreement required these representations be provided, the action is one for breach-of-contract, not fraud.[103]

---

[98]  *See* Pl.'s Mot. for Summ. J. at 52-59.

[99]  *Id.*

[100]  *Humanigen, Inc.*, 2021 WL 4344172, at *21 (quoting *LVI Grp. Invs., LLC v. NCM Grp. Hldgs., LLC*, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019)).

[101]  Pl.'s Mot. for Summ. J. at 58.

[102]  *Id.*

[103]  *Id.* at 58-59.

Defendants argue "[t]he Policies are not the source of [LIP Trust]'s claim[,] [r]ather, the Policies are 'the instruments by which'" the fraud was perpetrated.[104] Thus, Defendants allege it was not just the contracts that were fraudulent, it was the conduct of Columbus Life both before and during the life of the contracts.[105]

As colorfully noted by the Court of Chancery "[a] bootstrapped fraud claim . . . takes the simple fact of nonperformance, adds a dollop of the counterparty's subjective intent not to perform, and claims fraud."[106]

But bootstrapping does not occur:

> (1) where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, (2) where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim, (3) when the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction or (4) when the breach of contract claim is not well-pled such that there is no breach claim on which to "bootstrap" the fraud claim.[107]

That last scenario applies here. Defendants have brought no breach-of-contract claim. There is a fraud claim (Counterclaim I). And there is a declaratory judgment claim (Counterclaim II). But there is no pled breach-of-contract claim at

---

[104] Defs.' Answering Br. at 55-56 (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010)).

[105] *See id.* at 56.

[106] *Smash Franchise P'rs, LLC v. Kanda Hldgs., Inc.*, 2020 WL 4692287, at *16 (Del. Ch. Aug. 13, 2020), *vacated in part on other grounds*, 2020 WL 6037161, at *1 (Del. Ch. Oct. 8, 2020).

[107] *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *26 (Del. Ch. Sept. 18, 2020) (cleaned up).

all such that there could be bootstrapping.[108]

Accordingly, the fraud claim is not a bootstrapped breach-of-contract claim.

**b. There are disputed factual issues on Defendants' Fraud Claim, so summary judgment is unavailable.**

First, Columbus Life argues that Defendants have not shown Columbus Life "concluded that the policies . . . were definitely STOLI and certainly never formulated a secret plan to lay in wait and challenge them many years later."[109] Second, Columbus Life says that neither "Wilmington Trust [n]or the Banks ever asked Columbus Life whether it had insurable interest concerns about the Policies."[110]

Defendants counter that Columbus Life misrepresented the state of the Policies by sending annual reports from 2011 to 2019 and policy illustrations acknowledging the policies were "in force."[111] Because "[a] policy that is void *ab initio* never takes effect in the first place," when Columbus Life used the phrase "in force" Defendants say it was a misrepresentation.[112] Even if this was a half-truth,

---

[108] In its Reply, Columbus Life seems to abandon its bootstrapping argument. *See* Pl.'s Reply Br. at 38-42, July 21, 2022 (D.I. 299).

[109] Pl.'s Mot. for Summ. J. at 53 (citing D.I. 277, Ex. QQQ at 62-80 (Deposition of Robert Noschang) and *id.*, Ex. RRR at 3-6 (Columbus Life's Supplemental and Amended Objections and Responses to First Set of Interrogatories)).

[110] *Id.* at 54-55.

[111] Defs.' Answering Br. at 34-35.

[112] *Id.* at 35-37.

Defendants maintain it still was a misrepresentation.[113]

Both Columbus Life and Defendants contest, in opposing postures, that the request and receipt of Policy-related information constitutes misrepresentation or omission. Given the present record, whether the parties' various actions constituted misrepresentation or omission must be investigated more fully with the benefit of factfinding through trial. And, as such, summary judgment cannot be granted.

Columbus Life suggests, too, that LIP Trust could not have relied on its alleged misrepresentations or omissions because it was "warned by PEM that the non-recourse funded policies it was investing in carried insurable interest risk."[114] But instead of attempting to rescind or seek releases, LIP Trust continued to operate and failed to investigate.[115] Thus, insists Columbus Life, LIP Trust could not have justifiably relied on any alleged misrepresentation or omission by Columbus Life because it was warned by PEM and did nothing.

Defendants say LIP Trust had no reason to heed the warnings by PEM because the receiver of the PEM assets, appointed by the federal court, advised that the portfolio was valid and that "there were 'no red flags.'"[116]

"[W]hether one's reliance was reasonable generally is a question of fact that

---

[113] *Id.* at 37.

[114] Pl.'s Mot. for Summ. J. at 55.

[115] *See id.* at 55-56.

[116] Defs' Answering Br. at 48 (quoting D.I. 228, Ex. W at 243 (Deposition of Robert Mosier)).

cannot be determined on summary judgment."[117]  Again, just so under the present record developed by the parties.

## IV. CONCLUSION

*Price Dawe* and *Berland* hold that when an insured's use of non-recourse funding allows her to obtain a policy without her ever paying her own premiums the insurance policy lacks an insurable interest.  The fact that, through such a scheme, neither Mrs. Kluener nor Mrs. Chisholm paid the premiums means the Policies here each lack an insurable interest and are thus void *ab initio*.[118]  Accordingly, summary judgment on Columbus Life's Counts I and II (declaratory judgement that the Policies lack insurable interests and are STOLIs) is **GRANTED**.

Because the opposing parties' fraud claims require the fact-intensive determination of who knew what when, and because both parties have established there are material facts in dispute, summary judgment on Columbus Life's Claim III (fraud) and Defendants' Counterclaim I (fraud) is **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

---

[117] *Vague*, 2004 WL 1202043, at *1 (citing *Wilm. Tr. Co.*, 690 A.2d at 916).

[118] *Berland*, 266 A.3d at 972 ("If the use of nonrecourse funding allows the insured—individually or as settlor or grantor of a trust—to obtain the policy 'without actually paying the premiums,' then the requirements of §§ 2704(a) and (c)(5) are not met." (quoting *Price Dawe*, 28 A.3d at 1076)); *Price Dawe*, 28 A.3d at 1070 ("These policies, commonly known as 'stranger originated life insurance,' or STOLI, lack an insurable interest and are thus an illegal wager on human life.").